# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| APS EXPRESS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cv-03275 |
| ) | |
| SEARS HOLDINGS CORPORATION, ) | Judge Sharon Johnson Coleman |
| SEARS HOLDINGS MANAGEMENT ) | |
| CORPORATION, and INNOVEL ) | |
| SOLUTIONS, INC., *formerly known as* ) | |
| SEARS LOGISTICS SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff APS Express, Inc. ("APS") filed an amended complaint alleging a claim for quantum meruit and three claims for fraud against Sears Holdings Corporation, Sears Holdings Management Corporation, and Innovel Solutions, Inc., formerly known as Sears Logistics Services, Inc. (collectively, "Sears"). APS alleges Sears provided APS false information about the profitability of an arrangement whereby APS recycled or resold old appliances collected from Sears. APS also alleges that Sears permitted its truck drivers to steal and resell the most valuable of those appliances, thereby further undercutting the profitability of the endeavor. Sears moves to dismiss the quantum meruit claim (Count I) and one of the fraud claims (Count IV). The Court denies in part and grants in part the motion.

**Background**

The following facts taken from the complaint are accepted as true for purposes of ruling on the motion to dismiss now before the Court. Sears is the owner of online and brick-and-mortar retail stores that sell, among other goods, home appliances. Dkt. 63 ¶¶ 13-14. When a customer purchases an appliance from Sears, Sears offers to remove the customer's old appliance and dispose of it in

compliance with environmental safety regulations. *Id.* ¶¶ 15-16. Sears itself removes the appliances from customers' homes ("haul-away services") and it retained APS to process those appliances ("recycling services"). *Id.* ¶¶ 16-25. APS had been providing Sears with recycling services since 1994. *Id.* ¶ 11-12. Prior to 2011, APS was able to offset the costs of providing recycling services and turn a profit by selling the resalable appliances generated by haul-away services. *Id.* ¶ 29. APS paid Sears for the appliances it obtained. *Id.* ¶ 38.

APS alleges that beginning in 2011, Sears stopped actively policing theft by delivery drivers of the resalable appliances generated by haul-away services. *Id.* ¶ 30. According to APS, Sears turned a blind eye to the routine practice of delivery drivers switching out resalable appliances for "junk" appliances (that were not generated by haul-away services) so that the delivery drivers could themselves profit from the resale. *Id.* ¶¶ 32-33. In March 2011 APS met with Sears to discuss maximizing the revenue generated from Sears' haul-away services. *Id.* ¶ 35. At that meeting, APS raised concerns about theft of the resalable appliances. *Id.* ¶¶ 36-38. APS alleges that Sears fraudulently represented it was enforcing a "zero-tolerance" policy regarding theft when in fact Sears knew about widespread theft and was not taking any action to prevent it. *Id.* ¶¶ 39-40.

In 2011, Sears decided it would select its recycling services provider via an online auction. *Id.* ¶ 42. In advance of the auction, Sears gave APS a Master Service Agreement ("MSA") and a Statement of Work ("SOW") that APS was required to sign as a prerequisite for participating in the auction. *Id.* ¶ 45. Sears also tendered to APS a spreadsheet that listed each distribution center and the historical volume of each type of appliance generated by haul-away services at that distribution center. *Id.* ¶ 48. APS alleges the volume of appliance data was inaccurate and "substantially overstated" the amount of appliances generated by haul-away services. *Id.* APS participated in the auction and was the winning bidder with respect to 16 distribution centers around the country. *Id.* ¶ 50.

Following its winning bid, APS encountered difficulties making a profit off of the resalable appliances. *Id.* ¶ 53. It again communicated its concerns to Sears about possible theft, and APS alleges Sears again knowingly overstated its efforts to prevent theft. *Id.* ¶¶ 53-57.

In 2014, Sears held another online auction to select its recycling services provider. *Id.* ¶ 64. Vendors were selected to provide services on a statewide basis instead of by individual distribution center. *Id.* ¶ 58. Sears representatives again gave APS a sample MSA and SOW and data regarding the volume of appliances historically generated at each distribution center. *Id.* ¶ 60, 63. Sears representatives also supplied APS with a list of each distribution center located in each state. *Id.* ¶ 60. APS alleges that the 2014 data, like the 2011 data, was inaccurate: the volume of appliances generated by haul-away services was overstated, as was the number of distribution centers in each state. *Id.* APS also alleges Sears made additional misrepresentations during a pre-auction conference call, and after the auction continued to overstate Sears' efforts to curb theft. *Id.* ¶¶ 66-72.

In March 2015, a former loss prevention manager told APS that since 2011 Sears had instructed the loss prevention department to "stop policing" how delivery truck drivers handled haul-away appliances. *Id.* ¶ 75. When APS confronted Sears about this practice, Sears terminated APS as its recycling services provider. *Id.* ¶ 76.

**Legal Standard**

A complaint will survive a motion to dismiss under Rule 12(b)(6) if its well-pleaded facts when accepted as true and viewed in the light most favorable to the plaintiff state a plausible claim for which relief can be granted. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). Facts alleged in a complaint are accepted as true except when contradicted by an exhibit considered part of the pleadings. *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013). Exhibits attached to a motion to dismiss are considered part of the pleadings if they are referred to in the complaint and are central to the claims. *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

**Discussion**

*Count I - Quantum Meruit*

Sears argues that APS' claim for quantum meruit fails because (1) APS cannot contradict the position taken in its earlier complaints by now arguing that there was no valid and enforceable contract; and (2) APS cannot pursue a quantum meruit claim because the MSAs and SOWs were valid contracts that covered payment for the work APS performed.

To state a claim for quantum meruit, APS must allege (1) it performed a service that benefitted defendants; (2) it performed the service non-gratuitously; (3) defendants accepted the service; and (4) no contract existed to prescribe payment for the service. *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 908 (Ill. App. 1998). In its third amended complaint (the operative complaint for purposes of this motion to dismiss) APS alleges that the MSAs and SOWs do not form valid contracts because they lack consideration, and that even if they are valid contracts, payment for the services APS provided is not covered by those contracts. Sears asserts that this argument cannot be entertained by the Court because it contradicts APS' breach of contract claims in its earlier complaints. Sears is incorrect. "[W]here the original complaint and an amended complaint contain contradictory or mutually exclusive claims, only the claims in the amended complaint are considered; the contradicted claims in the original complaint are knocked out." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 783 (7th Cir. 2013). Sears' reliance on *Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748 (7th Cir. 2001) is misplaced. *Help At Home* concerns a situation where a plaintiff pressed an argument in opposing a motion to dismiss that was contradicted by its characterization of a transaction in the *operative* complaint. 260 F.3d at 753. Here, APS' use of the word "contract" to describe the agreements in the operative complaint does not prevent APS from arguing the agreements were not *valid* contracts. *Landry v. E.G. Shinner & Co.*, 344 Ill. 579, 584 (1931) ("where the word 'contract' is used, it does not necessarily mean 'valid contract.'").

The Court need go no further to find that APS' quantum meruit claim survives the motion to dismiss. Determining whether the purported contracts are valid and if valid, whether they cover payment for all the services APS provided would require this Court to interpret the purported contracts. Because the MSAs and SOWs are on the matter of payment ambiguous at best, the correct interpretation of them is a question of fact which cannot properly be determined at this stage in the proceedings. *Quake Const., Inc. v. Am. Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990).

*2. Count IV - Fraud*

Sears asserts that APS' fraud claim articulated in Count IV fails because reliance on the alleged misrepresentations was unreasonable as a matter of law and because APS has not pled when the misrepresentations occurred with sufficient particularity.

Count IV of the complaint identifies five different time periods, with varying degrees of specificity, during which misrepresentations were allegedly made: (a) on March 18, 2011; (b) between March 18, 2011 and the summer of 2011; (c) between September 2011 and August 2014 (d) "leading up to an auction in 2014"; and (e) between September 2014 and April 2015. Sears asserts that specific dates must be provided and that alleging misrepresentations occurred throughout a period of months or years does not satisfy Rule 9(b). It relies primarily on *Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1072 (N.D. Ill. 2001)(Bucklo, J.) to support that proposition. In contrast, APS asserts that a date range is sufficient when the description of the misrepresentations is otherwise specific enough to assure the Court that the plaintiff's accusation of fraud is "responsible and supported, rather than defamatory and extortionate." *Ray v. Citigroup Glob. Markets, Inc.*, No. 03 C 3157, 2003 WL 22757761, at *3 (N.D. Ill. Nov. 20, 2003) (Kennelly, J.).

The degree of specificity needed with regard to the who, what, where, when, and why of a fraud claim should not be determined by reference to a bright line rule; the level of particularity required depends on the facts of each case. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir.

5

2014). Here, APS identified at least one specific date, March 18, 2011, on which the relevant misrepresentations were made. Additionally, in the paragraph describing the misrepresentations made between March 18, 2011 and the summer of 2011, APS provides an example tied to a specific date. Dkt. 63 ¶ 42 (a misrepresentation was made "in an email, dated August 19, 2011."). This is sufficient under Rule 9(b). However the Court agrees that the other broad date ranges, unaccompanied by specific examples, do not satisfy the particularity requirement. Therefore Count IV may only proceed with respect to misrepresentations made between March 18, 2011 and the 2011 auction.[1]

Regarding reliance, the Illinois Supreme Court has stated that "one is justified in relying upon the representations of another, without independent investigation, where the person to whom the representations are made does not have the same ability to discover the truth as the person making the representations." *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill.2d 179, 195 (1989). Whether a plaintiff's reliance was reasonable is ordinarily a question of fact. *Siegel Dev., LLC v. Peak Const. LLC*, 373 Ill.Dec. 501 (Ill. App. 2013). But a court may determine that reliance was unreasonable as a matter of law "when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Tirapelli v. Advanced Equities, Inc.*, 351 Ill.App.3d 450, 456 (2004) (internal quotations omitted). Viewing the alleged facts in the light most favorable to APS, it cannot be said that its reliance on the alleged misrepresentations was unreasonable as a matter of law. First, access to the truth was skewed in Sears' favor. Second, although APS suspected theft was occurring and knew that it was struggling to turn a profit, it was arguably reasonable under the circumstances to continue to provide Sears recycling services. APS may reasonably have thought it better to not sour its relationship with Sears by terminating its

---

[1] A court may deny leave to re-plead a claim where the plaintiff has demonstrated "repeated failure to cure deficiencies by amendments previously allowed." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Given that this is APS' third amended complaint, the dismissed portions of Count IV will be dismissed with prejudice.

services while it waited for Sears to root out completely the theft problem. It might be the case that the point at which APS' eyes were finally opened came later than it reasonably should have. But determining at what point APS' continued reliance became unreasonable is better left to a stage in the proceedings when the Court or a jury is presented with a more thorough factual record.

Defendants' motion to dismiss [66] is granted with prejudice as to the portion of Count IV based on misrepresentations made after the 2011 auction, and it is denied in all other respects.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED:  May 3, 2016